UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEITH CALLOWAY | CIVIL ACTION |
| VERSUS | NO. 05-4003 |
| MARLIN GUSMAN ET AL. | SECTION "R" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Keith Calloway, is a convicted inmate currently incarcerated in the Hunt Correctional Center in St. Gabriel, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman and Dr. James Ingelese. Calloway alleges that he did not receive adequate medical care for his hepatitis C condition while he was incarcerated in the Orleans Parish Prison system through June 2005. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶¶ IV, V).

On February 2, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Craig Frosch, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

**THE RECORD**

Calloway confirmed that, although he was incarcerated in Hunt at the time of the conference, his claim in this case is based exclusively on events that occurred while he was incarcerated in OPP. He testified that he arrived at OPP on June 22, 2002 and left there in August 2005. He said he was incarcerated in OPP after being arrested on a second degree murder charge, for which he was convicted on June 15, 2005. He said he is serving a sentence of 40 years in prison.

Plaintiff confirmed that his exclusive claim in this case is that he was diagnosed with hepatitis C before his arrest and did not receive proper medical care for that condition while incarcerated in OPP. He said he was first diagnosed with hepatitis C about six years ago, after he experienced weight loss and loss of appetite. He said he was diagnosed with the disease at an AIDS Task Force clinic at Charity Hospital in New Orleans. He said he had received no treatment for his condition before going to jail.

Calloway testified that he is 45 years old. At the time of the Spears hearing, he had not yet received a copy of his medical records. He said he had told jail officials that he had hepatitis C during his initial screening when he was booked into OPP. He confirmed that he was seen by Dr. Gautreaux at OPP in December 2003 and by Dr. James Ingelese, both of whom told him he would need a biopsy to determine the extent of any damage to his liver and the stage to which his disease had progressed, but the biopsy never

occurred. He said he was examined by the doctors, who conducted some blood work, but they never sent him to any special clinic concerning his hepatitis C and he never received the biopsy. He said the doctors told him on June 14, 2005 that he was being scheduled for an appointment at the Charity Hospital hepatitis clinic, but he was never taken there.

Calloway stated that he was transferred from OPP to Hunt some time before Hurricane Katrina, probably in June 2005. He said that, since he had been in Hunt, he was taken to Charity Hospital by officials at Hunt for an appointment and examination, but no biopsy was conducted at that time.

He testified that, while he was in OPP, he was seen in February 2004 by Dr. Dileo, who examined him and scheduled him for a liver function test a month later. He complained that all that was done for him at OPP was to take him to the medical unit there, run a blood test and check his stomach for swelling. Thus, he clarified that his complaint is not that doctors at OPP failed to see him – they checked on him several times – but that they did not perform the biopsy that was needed. He said the test is to determine the extent of the damage to his liver and to what stage his disease has progressed. He said that if the disease is permitted to progress he will die. He said the test involves taking a sample of liver out of the body with a needle and testing it.

Calloway estimated that he saw two or three doctors at OPP, all of whom checked him but none of whom sent him to Charity Hospital for the biopsy. He estimated that he

saw doctors about six times. He testified that Dr. Inglese told him it was too expensive to treat him for the disease at OPP, so he would have to be sent to Charity Hospital, but he was not sent to Charity until after he was transferred to Hunt.

Calloway testified that he wanted this treatment because he knows he needs it. He said that, after he was transferred from OPP to Hunt, Hunt officials sent him to Charity Hospital in New Orleans. He said that the doctor at the hospital examined him and told him he would schedule the biopsy at the hospital on a later date. Calloway testified that Hurricane Katrina struck New Orleans before that biopsy could be scheduled and that Charity Hospital had been closed after the hurricane, so he could not be sent there for the test. He testified that a doctor at Hunt told him that he had been rescheduled for a biopsy at Earl K. Long Hospital in Baton Rouge some time during February 2006. He said at the time of the Spears hearing that he was awaiting that appointment.

After the hearing, I sent plaintiff a copy of his OPP medical records and a copy of his medical records from Hunt. I also requested that plaintiff review them and write me with any comments he might like to make about the records and to advise me in writing whether he was taken to Earl K. Long Hospital and, if so, what advice the doctor gave him.

Asked about the current status of his condition, plaintiff testified that he continues to lose weight and appetite, that he sometimes–although not often–experiences pain, and

that he continues to be concerned about the current stage of his disease and what the effect has been on his liver.

Plaintiff's medical records from OPP, Record Doc. No. 14, reflect the following:

Calloway was seen by Dr. Gautreaux on December 9, 2003 with complaints of weight and appetite losses. Calloway reported a five-year history of hepatitis C. He was referred to the hepatitis clinic in two months.

On December 15, 2003 plaintiff was seen by Dr. Dileo, who noted questionable weight loss secondary to decreased appetite. On physical examination, plaintiff's liver edge was not felt. He had no fever. Dr. Dileo ordered a liver function test in three months.

Dr. Dileo saw Calloway on February 9, 2004 for follow up of questionable weight and appetite losses. The liver edge was not palpated and no abdominal mass was found. Dr. Dileo ordered liver function tests in one month and a referral to the hepatitis clinic in two months.

On March 11, 2004, Dr. Caldwell discussed with plaintiff his liver function tests that had been performed on March 9, 2004. The doctor ordered additional liver function tests in three months.

Dr. Inglese examined Calloway on March 17, 2004. He noted that plaintiff had schizophrenia but his symptoms had been stable and he was now off medications. Dr.

Inglese counseled plaintiff regarding viral hepatitis, his prognosis and the benefits and limitations of current prescription options, and advised him not to refuse medical options. He warned Calloway to avoid all alcohol and hepatitic drugs, including nonsteroidal anti-inflammatory drugs.

On June 11, 2004, plaintiff saw Dr. Campbell for evaluation of lab results. The doctor ordered repeat liver function tests in 60 days and referred plaintiff to the hepatitis clinic.

On July 8, 2004, Calloway saw Dr. Campbell, who noted that plaintiff's liver function tests were stable and ordered them again in 90 days.

Dr. Dileo noted on September 9, 2004 that plaintiff's liver function tests had improved. He noted Calloway's mental disturbance and stated that plaintiff became hostile and walked out.

Dr. French reported on March 23, 2005 that hepatic function tests had been done and were high over the past six months. He noted that plaintiff's psychosis was stable and that plaintiff wanted a transfer.

Plaintiff saw Dr. French on April 7, 2005. Lab tests ordered two weeks earlier had not been completed. Dr. French noted that plaintiff had an extended sentence and met other criteria for transfer. Calloway was referred for a transfer.

Plaintiff's medical records from Hunt Correctional Center, Record Doc. No. 21, reflect the following:

Calloway was screened for intake at HRDC, a receiving unit at Hunt, on August 22, 2005. He reported a medical history of hepatitis C virus and a positive tuberculin test in 1985.

Calloway was seen on August 24, 2005 at Medical Center of Louisiana at New Orleans (Charity Hospital) for a history of chronic hepatitis C infection. The physician ordered lab tests. However, the doctor noted that, if plaintiff has a chronic hepatitis C infection, he will not be considered for therapy until he is out of prison.

On September 23, 2005, plaintiff was sent a letter from Lora Rodriguez at the Department of Corrections, stating that he would not be treated for hepatitis while housed in HRDC but would receive treatment once he was in a permanent facility.

Plaintiff was transferred to Hunt on November 11, 2005. He reported a history of positive tuberculin test in the 1980s, hepatitis C, asthma and questionable gastrointestinal disease.

A needle biopsy of plaintiff's liver was conducted at Earl K. Long Medical Center on February 20, 2006. The final diagnosis was "chronic hepatitis, consistent with hepatitis C (grade 1, stage 2)."

Pulmonary function tests were performed at Earl K. Long Medical Center on March 17, 2006. All results were within normal limits.

Calloway was seen in the Hunt medical clinic on March 27, 2006. Physical examination was normal. He was to begin a treatment program for hepatitis C with an injection of PEG-Intron[1] on April 7, 2006, followed by weekly injections until March 3, 2007. He was also to start taking Ribavirin[2] daily on April 7, 2006 until March 10, 2007.

## ANALYSIS

I. STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

[1]"Chronic hepatitis C can be cured with interferon and antiviral combination therapy in some patients. Forty percent of patients who take a combination of interferon alpha and ribavirin for chronic hepatitis C have a long-lasting benefit; those with long-term remission are considered to be cured." Physicians Desk Reference (avail. at http://www.pdrhealth.com/patient_education/BHG01HP01.shtml).

[2]Rebetol (generic name: Ribavirin): "In combination with the interferon drugs Intron A or PEG-Intron, Rebetol is prescribed to treat chronic hepatitis C." Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/reb1626.shtml.

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The

Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[3]

II. MEDICAL CARE

It appears that Calloway was a pretrial detainee for part of the time and a convicted prisoner at all other times about which he complains about the medical care for his hepatitis C. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th

[3] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by

prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Calloway fails completely to allege facts sufficient to establish deliberate indifference.

Plaintiff's testimony negates any inference that defendants acted with deliberate indifference to serious medical needs. Initially, it cannot be concluded with certainty that the condition Calloway described, chronic hepatitis C without any serious symptoms, presented a serious medical need that posed a substantial risk of harm during his incarceration at OPP. See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (Duffy, J.) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs); cf. Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate indifference existed when plaintiff was examined by physician and received prescription medication). Calloway's testimony did not identify any serious risks of harm or any actual harm resulting from the alleged delays in treatment, and they do not rise to the level of serious medical needs for purposes of constitutional analysis.

Even assuming that plaintiff's hepatitis C was a serious condition for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any

inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony, shows that he received constitutionally adequate medical care while incarcerated at OPP. Plaintiff testified that he saw doctors about six times and that blood work was done while he was at OPP. Calloway's medical records confirm that he saw doctors at OPP nine times and that liver function tests were performed repeatedly, with two doctors noting that his liver function was stable on July 8 and had improved on September 9, 2004. Although plaintiff testified that two doctors at OPP told him he would need a biopsy to determine the extent of any damage to his liver and to what stage his disease had progressed, nothing in his testimony or the medical records indicates that such a biopsy was ever recommended by any physician while he was at OPP.[4]

When Calloway had a liver biopsy on February 20, 2006 after being transferred to Hunt, the biopsy confirmed what he and his doctors already knew, that he had chronic hepatitis C. His liver damage was at grade 1, stage 2, indicating that it was still at a low level of progression.[5] See Still v. Crawford, 155 Fed. Appx. 241, 2005 WL 2993883, at

---

[4]According to the National Digestive Diseases Information Clearinghouse, a service of the National Institute of Diabetes and Digestive and Kidney Diseases, National Institutes of Health, "[l]iver biopsy is not necessary for diagnosis but is helpful for grading the severity of disease and staging the degree of fibrosis and permanent architectural damage." National Digestive Diseases Information Clearinghouse, NIH Publication No. 03–4230 (Feb. 2003) (avail. at http://digestive.niddk.nih.gov/ddiseases/pubs/chronichepc/#E).

[5]The grade scores measure inflammation, ranging from 0 for no inflammation to 4 for marked or extensive inflammation. Grade 1 indicates either "peri-portal inflammation[,] no hepatocellular necrosis" or "minimal [lobular inflammation], no necrosis (inflammatory cells within the lobule)." The stage scores measure fibrosis, ranging from 1 for no or mild fibrosis, to 4 for "probable or definite cirrhosis." Stage 2 indicates "peri-portal fibrosis with/without extension and portal-portal bridging." The Hepatitis Information Network,

*1 (8th Cir. 2005), cert. denied, 126 S. Ct. 2031 (2006) (prisoner with hepatitis C failed to show deliberate indifference when he saw doctor almost monthly, received hepatitis B immunization, was tested for hepatitis A and was referred to specialist, who evaluated his need for interferon testing); Randall v. Behrns, 141 Fed. Appx. 307, 2005 WL 1772311, at *1 (5th Cir. 2005), cert. denied, 126 S. Ct. 1885 (2006) (prisoner with hepatitis B who was evaluated by doctors, received liver biopsy and was seen by specialists failed to show deliberate indifference); Price v. Kurtz, No. 95-CV-1304, 1996 WL 122624, at *3 (E.D. Pa. Mar. 19, 1996) (regular monitoring of hepatitis-infected plaintiff's blood negates allegation of deliberate indifference and failure to treat).

Although plaintiff has alleged delay in receiving medical care and has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. The delay about which plaintiff complains did not cause "a life-

avail. at http://www.hepnet.com/hkn/c14.html.

long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case.

Contentions like Calloway's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see Randall, 2005 WL 1772311, at *1 (allegations that plaintiff with hepatitis C should have been examined sooner and received different treatment reflect mere negligence and disagreement with treatment decisions); Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's

disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (provision of medical treatment is inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 18th day of August, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE